C. H. & A. W. Wilder v. Geo. H. Bennett.

*Deed.   Water privilege.*

A. deeded a factory to B., with the first right to the water privilege of an adjacent mill pond, reserving to himself the right to draw water for the use of another water privilege, but not to the damage of that of B., when there should be a scarcity of water. B. afterwards raised the dam, as he had a right to do; after which, when the stream was low, A. used water from it, not leaving sufficient for B. A. claimed that he had an equal right with B. to draw the water down to the top of the dam as it was when the deed was made to B. But the court held that the deed to B. gave him a right to make the pond afford as ample a supply of water as possible, and that his prior right to sufficient water to satisfy the requirements of his factory, as they were when the deed was made, existed as much after the dam was raised, as before, and applied to the water saved by raising the dam, as well as to that which was saved by the dam in its old condition.

Case for diverting water from the plaintiffs' mills in Montpelier.

Plea, the general issue, and trial-by jury, at the March Term, 1857,—POLAND, J., presiding,

The plaintiffs put in evidence a deed, under which they claimed, from H. N. Baylies to the plaintiff, Charles H. Wilder, dated August 3d, 1847, conveying certain factory property on the east side of the Branch, so called, in the village of Montpelier, and in connection therewith, " the water privilege connected with, and attached to said premises, with the first right to draw water from said mill pond (excepting certain rights thereto previously deeded by Baylies to A. Waterman and others) the said Baylies reserving the right to draw water from said pond for the use of his water privilege on the west side of said branch, but not to the damage of the water privilege hereby (thereby) granted to said Wilder, when there shall be a scarcity of water; the said premises being always bound and subject to keep the dam across said branch in repair, and to rebuild the same when necessary."

The plaintiffs then introduced evidence tending to show how much water was used at the date of this deed by the factory thereby conveyed.

It also appeared in evidence, that in 1852, the plaintiffs took out all the machinery in the factory, and enlarged the building, and converted it into a saw mill, and, put in a variety of machinery. The plaintiffs' evidence further tended to show that during the month of February, 1856, he could not get water enough from the pond, and that there was not then water enough running in the stream to run all his machinery, and not so much water as the old factory used to draw to propel its machinery.

He also put in evidence tending to show that the defendant, during February, 1856, used water from the pond to do a variety of work in his mill on the west side of the stream. The defendant held under a title derived from Baylies, subsequent to the above deed of Baylies to Wilder, and held all that Baylies reserved to himself in the deed to Wilder.

The defendant's testimony tended to show that since the date of the deed to Wilder, the plaintiffs had raised the dam at the mill from six inches to a foot, and that the dam, during the month of February, 1856, was from six inches to a foot higher than it was at the date of that deed.

The defendant also put in evidence tending to show that during the month of February, 1856, he never drew water at his shop when the water in the pond was more than six inches below the top of the dam, and that he drew but very little water during that February.

The defendant requested the court to charge the jury, that if they found that the dam had been raised since 1847, and was higher during the month of February, 1856, than it was in 1847, then the defendant would have a right to draw the water from the pond, until it was as low as the top of the dam, as it was in 1847; and that the defendant, under the deed, would have a right to draw water from the pond, when the water was so high that it would have run over the dam, as it was in 1847.

The court refused to charge the jury as requested by the defendant, but did charge them, among other things not excepted to, that the plaintiffs' rights were not limited to the pond at the height it was in 1847, but that they might raise it at their own option, that in this they could not prejudice the rights of the defendant, or prevent him from having any supply of water there might be after they got their supply, yet, if the plaintiffs chose to raise the dam, they would have a right to do so, and the parties' right to that surplus of water so accumulated would be the same as to the original pond under the deed; and that the defendant could not draw from that surplus, if the plaintiff would thereby be deprived of the amount of water which the old factory used to draw, and the plaintiffs wished to use the same.

The jury returned a verdict for the plaintiffs. To the refusal to charge as requested, and to the charge as above set forth, the defendant excepted.

*Merrill & Willard*, for the defendant.

*O. H. Smith*, for the plaintiffs.

The opinion of the court was delivered by

BARRETT, J. In this case the plaintiffs acquired their rights, in respect to the water privilege in question, from Baylies, who conveyed to C. H. Wilder certain factory propery, and in connec-

tion therewith, "the water privilege connected with, and attached to said premises, with the first right to draw water from said mill pond (the prior rights of Waterman and others being excepted from said conveyance), said Baylies reserving the right to draw water from said pond for the use of his water privilege on the west side of said branch, but not to the damage of the water privilege hereby granted to said Wilder, when there shall be a scarcity of water."

Subsequently, Baylies conveyed to the defendant said last named water privilege, with the right which he reserved to himself in his conveyance to C. H. Wilder, as above set forth. So that the defendant stands in the place, and in full possession of the rights of Baylies, under the said reservation.

The present action was brought to recover damages alleged to have been caused by the defendant, in so using his water privilege, under said reservation, as to infringe the rights of the plaintiffs under the deed of Baylies to C. H. Wilder.

The defendant insists that he has a right to use the water, provided he does not draw it down below the top of the dam, as it was in 1847, at the time of the conveyance by Baylies to C. H. Wilder.

In other words, he claims that the *exclusive* right of the plaintiffs, in the time of scarcity of water, is limited to a full pond, as it would be with a dam of the same height as it was when said conveyance was made to C. H. Wilder.

The plaintiffs have raised the top of the dam about six inches, the right to do which the defendant does not deny. But he claims that inasmuch as the water, thus saved in the pond, would have run over the dam, but for the addition made thereto by the plaintiffs, he has a common right with the plaintiffs to draw and use the water thus accumulated, irrespective of the plaintiffs' needing it to carry on their business.

We think the defendant takes an erroneous view of the matter. It seems to us that the deed of Baylies to C. H. Wilder invested him and his assigns with the full right to make that pond afford as ample a supply of water as they can by raising the dam, and with the full right, as against Baylies and his assigns, to the first use of that water for the full beneficial enjoyment of the premises conveyed by said deed.

44

The reservation in virtue of which alone the defendant has any right, is expressly limited, so that it ceases to operate when the use of the water by the defendant "shall be to the damage of said Wilder when there shall be a scarcity." In the present case, the verdict, in connection with the evidence, shows that the conjuncture had occurred, when, by the terms of the deed, the operation of the reservation was suspended.

This left the plaintiffs in the enjoyment of the *exclusive* right, and exposed the defendant to liability, if he infringed that right, by using the water to the damage of the plaintiffs' privilege.

Under these views, the requests made by the defendant were not well grounded. We think the charge full as favorable to the defendant, as the law, in view of the evidence, would warrant.

Judgment is affirmed.